**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| WILLIAM JOHNSON,<br><br>  Plaintiff,<br><br>  v.<br><br>IAA, INC., JOHN P. LARSON, BRIAN BALES, WILLIAM BRESLIN, SUE GOVE, LYNN JOLLIFFE, PETER H. KAMIN, OLAF KASTNER, JOHN W. KETT, and MICHAEL SIEGER,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William Johnson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against IAA, Inc. ("IAA" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with Ritchie Bros. Auctioneers Incorporated ("RBA").[1]

2. On November 7, 2022, the Company entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement") with RBA, RBA's subsidiary, Ritchie

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Bros. Holdings, Inc. ("US Holdings"), and US Holdings' subsidiaries, Impala Merger Sub I, LLC ("Merger Sub 1") and Impala Merger Sub II, LLC ("Merger Sub 2").[2] The Merger Agreement provides that RBA will acquire IAA, with IAA stockholders receiving 0.5252 of a common share of RBA and $12.80 in cash for each share of IAA.[3]

3. The Company's corporate directors subsequently authorized the February, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.[4] The Proxy Statement, which recommends that Company stockholders vote in favor of the Share Issuance and the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[5]

---

[2] The Merger Agreement was amended on January 22, 2023.

[3] On January 23, 2023, RBA entered into a securities purchase agreement with certain affiliated funds of Starboard Value LP ("Starboard"), pursuant to which Starboard purchased $485 million of convertible preferred stock and approximately $15 million of common shares of RBA. Upon closing of the Proposed Transaction, it is expected that current RBA shareholders will receive a one-time special dividend in the amount of $1.08 per share.

[4] The Merger Agreement, as amended, requires IAA to issue additional shares of its common stock (the "Share Issuance"). As a Nasdaq listed company, IAA must thus secure stockholder approval before issuing 20% or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company. Accordingly, the Proposed Transaction is contingent upon IAA stockholders voting to approve the proposed Share Issuance.

[5] The Special Meeting at which stockholders are asked to approve the Share Issuance and Proposed Transaction currently is scheduled for March 2, 2023.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Share Issuance and Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of IAA common stock.

10. Defendant IAA is a Delaware corporation with its principal executive offices located at Two Westbrook Corporate Center, 10th Floor, Suite 500, Westchester, Illinois 60154. IAA's shares trade on the New York Stock Exchange under the ticker symbol "IAA." Founded in 1982, IAA operates a digital marketplace that connects vehicle buyers and sellers. The

Company's platform facilitates the marketing and sale of total loss, damaged, and low-value vehicles for a range of sellers. IAA provides buyers with various bidding/buying digital channels, vehicle merchandising, evaluation services and online bidding tools, and replacement part inventory. The Company serves a buyer base and spectrum of sellers, including insurance companies, dealerships, fleet lease and rental car companies, and charitable organizations. IAA has approximately 210 facilities throughout the United States, Canada, and the United Kingdom.

11. Defendant John P. Larson is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Brian Bales is and has been a director of the Company at all times relevant hereto.

13. Defendant William Breslin is and has been a director of the Company at all times relevant hereto.

14. Defendant Sue Gove is and has been a director of the Company at all times relevant hereto.

15. Defendant Lynn Jolliffe is and has been a director of the Company at all times relevant hereto.

16. Defendant Peter H. Kamin is and has been a director of the Company at all times relevant hereto.

17. Defendant Olaf Kastner is and has been a director of the Company at all times relevant hereto.

18. Defendant John W. Kett is and has been Chief Executive Officer, President and a director of the Company at all times relevant hereto.

19. Defendant Michael Sieger is and has been a director of the Company at all times relevant hereto.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On November 7, 2022, IAA and RBA jointly announced in relevant part:

**VANCOUVER, BC, and WESTCHESTER, Ill. –November 7, 2022** - Ritchie Bros. Auctioneers Incorporated (NYSE: RBA) (TSX: RBA), (the "Company" or "Ritchie Bros.") and IAA, Inc. (NYSE: IAA), today announced that they have entered into a definitive agreement under which Ritchie Bros. will acquire IAA in a stock and cash transaction valued at approximately $7.3 billion including the assumption of $1.0 billion of net debt.1 The transaction has the unanimous support of both boards of directors.

Under the terms of the merger agreement, IAA stockholders will receive $10.00 in cash and 0.5804 shares of Ritchie Bros. common stock for each share of IAA common stock they own. The purchase price of $46.88 per share represents a premium of approximately 19% to the closing share price of IAA common stock on November 4, 2022, and 23% to the 10-day volume-weighted average price, using Ritchie Bros.' 10-day volume-weighted average price on the NYSE of $63.55. The total purchase price also reflects a transaction multiple of 13.6x IAA's last twelve-month Adjusted EBITDA2 as of October 2, 2022. Upon completion of the transaction, Ritchie Bros. stockholders will own approximately 59% of the combined company and IAA stockholders will own approximately 41%.

IAA is a leading global digital marketplace connecting vehicle buyers and sellers, and the transaction will diversify Ritchie Bros.' customer base by providing the Company with a significant presence in the vehicle remarketing vertical that has strong industry fundamentals with proven secular growth. The combination will accelerate its growth and strategic vision to create a next-generation global marketplace for commercial assets and vehicles, supported by advanced technologies and data analytics. Additionally, the Ritchie Bros. management team has extensive experience in the automotive and insurance ecosystem, which will help shape the go-forward customer experience. With enhanced scale and an expanded addressable market, Ritchie Bros. will be able to drive additional Gross Transaction Value ("GTV") growth through its

5

platforms and auction sites, in turn generating more insights for its customers and expanding the adoption of Ritchie Bros.' other high-margin tech-enabled services.

"IAA accelerates our journey to become the trusted global marketplace for insights, services, and transaction solutions," said Ann Fandozzi, CEO of Ritchie Bros. "Their highly complementary business in an adjacent vertical will allow us to unlock additional growth. Through our trusted brands, similar operating model, and complementary services, we expect to drive efficiencies and create a more resilient business."

Fandozzi continued, "This announcement is a testament to the passion and dedication of the Ritchie Bros. and IAA teams. We expect this transaction to create new and exciting growth and development opportunities for employees of both Ritchie Bros. and IAA as we scale our combined business. As we do so, we will continue to foster our aligned culture and shared values grounded in supporting and empowering our team to create a best-in-class customer experience."

"Together, IAA and Ritchie Bros. will have expanded global operations, accelerating international buyer development and enhancing ancillary services such as transportation and finance," said John Kett, CEO and President of IAA. "The transaction will also provide compelling value to stockholders through the immediate cash component and the opportunity to participate in the substantial growth potential of our combined company with significant resources. I believe that very appealing new opportunities are ahead for IAA employees and new capabilities for customers as we enter this exciting new chapter with Ritchie Bros."

**Compelling Strategic and Financial Benefits**

- **Creates a Leading Global Marketplace for Commercial Assets and Vehicles:** Combining Ritchie Bros. and IAA's product offerings immediately creates a leading global marketplace for commercial assets and vehicles with pro forma GTV1 of approximately $14.5 billion for the last 12 months ended September 30, 2022 and pro forma revenue1 and Adjusted EBITDA1,3 of approximately $3.8 billion and approximately $1.0 billion, respectively, excluding the impact of synergies. The combined company's increased scale will allow it to build out its integrated digital marketplace.

- **Provides Diversification Benefits with Entry into Adjacent Vehicle Market:** The transaction represents Ritchie Bros.' entry into the large and steadily growing vehicle sector. IAA is an established market leader, currently delivering annual GTV of approximately $8.6 billion. It is one of the most trusted brands in the industry, with long-standing customer

6

relationships. Adding a successful business in a new vertical will diversify Ritchie Bros.' business by both customer and geography and create a more resilient business model to perform through market cycles.

- **Expands Local Yard Footprint to Broaden Customer Reach and Provide Enhanced Service:** By combining IAA's existing footprint of more than 210 facilities across the United States, Canada and Europe with Ritchie Bros.' existing footprint of over 40 owned and 24 leased facilities globally, the combined company will have new opportunities to advance its yard strategy more efficiently in key regions across the United States and internationally. The expanded real estate base will provide the company with additional flexibility to drive profitable growth by strategically leveraging capacity to best serve customers across both businesses. This includes leveraging Ritchie Bros.' footprint to expand IAA's broader capacity, including for catastrophic weather events. The combined real estate footprint also increases Ritchie Bros.' proximity to a broader customer base and local yards, allowing it to provide faster service and reduce transportation time and costs, enhancing the overall experience for customers.

- **Advances Ritchie Bros.' Digital Marketplace Development:** This combination brings together the best capabilities of both Ritchie Bros. and IAA.Marketplace technology investments are expected to drive enhanced returns as they will be amortized over significantly more units. Moving forward, the combined company will offer expanded access to additional insights, services, and transaction solutions to a wider customer base.

- **Unites Two Highly Complementary Businesses with Significant Synergy Potential:** The companies expect to achieve $100 to $120+ million in annual run-rate cost synergies by the end of 2025, driven primarily through consolidating back office, finance and technology, general and administrative, and operations.

- **Delivers Meaningful Earnings Accretion:** The transaction is expected to be accretive to Ritchie Bros.' adjusted earnings per share by low single digits in the first full year following the transaction close and mid-teens accretive after that.

**Integration Plan, Leadership and Board of Directors**

Ann Fandozzi will continue to serve as CEO of the combined company.

The Ritchie Bros. Board of Directors will expand to add IAA CEO and President John Kett and three other current members of the IAA Board following the close of the transaction. Erik Olsson, chairman of the Ritchie Bros. Board, will serve as chairman of the Board of the combined company.

7

Ritchie Bros. will continue to be legally incorporated in Canada and will retain its offices and employee base in Burnaby, British Columbia and IAA's Chicago, Illinois offices will serve as the official headquarters of the combined company. As of the transaction closing, approximately two thirds of the workforce will be in the United States on a combined basis.

Following the transaction close, Ritchie Bros. will continue to trade under the symbol RBA on both the NYSE and TSX.

**Timing to Close, Approvals and Financing**

The transaction is expected to close in the first half of 2023 subject to approval by Ritchie Bros. stockholders of the issuance of Ritchie Bros. stock in connection with the transaction and approval of IAA stockholders of the transaction, receipt of regulatory approvals and other customary closing conditions.

Ritchie Bros. intends to fund the cash consideration of the transaction through a combination of cash on hand and new debt. The Company has bridge financing commitments in place from Goldman Sachs, Bank of America, and Royal Bank of Canada. At closing of the transaction, the combined company is expected to have a pro forma leverage ratio of approximately 3x net debt to adjusted EBITDA. Additionally, Ritchie Bros. will prioritize de-leveraging following the close of the transaction. Ritchie Bros. also intends to maintain its current quarterly dividend of $0.27 per share and will consider future increases as the Company de-levers its balance sheet.

**Ritchie Bros.' and IAA's Third Quarter Financial Results**

In separate press releases issued today, Ritchie Bros. and IAA also announced financial results for their fiscal 2022 third quarters. The Ritchie Bros. press release is available at https://investor.ritchiebros.com/news/default.aspx. The IAA press release is available at https://investors.iaai.com/news/default.aspx.

**Advisors**

Goldman Sachs & Co. LLC served as lead financial advisor and Guggenheim Securities, LLC served as co-lead financial advisor to Ritchie Bros. Evercore and RBC Capital Markets also served as financial advisors to Ritchie Bros. J.P. Morgan Securities LLC served as financial advisor to IAA. Goodwin Procter LLP, McCarthy Tétrault LLP and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisors to Ritchie Bros. and Cooley LLP and Blake, Cassels & Graydon LLP served as legal advisors to IAA.

22. On January 23, 2023, IAA announced the amended Merger Agreement, stating, in relevant part:

> VANCOUVER, BC and WESTCHESTER, Ill., Jan. 23, 2023 /PRNewswire/ - Ritchie Bros. Auctioneers Incorporated (NYSE: RBA) (TSX: RBA) ("Ritchie Bros.") and IAA, Inc. (NYSE: IAA) ("IAA") today announced that they have amended the terms of their previously announced merger agreement, pursuant to which Ritchie Bros. will acquire IAA in a stock and cash transaction. The amended agreement, which delivers enhanced value to Ritchie Bros. shareholders and increased cash consideration to IAA shareholders, has been unanimously approved by each company's Board of Directors.
>
> Under the terms of the amended agreement, IAA shareholders will receive $12.801 per share in cash and 0.5252 common shares of Ritchie Bros. for each share of IAA common stock they own. The change in consideration mix represents a shift in the cash/stock mix to approximately 29% cash/71% stock from the previous mix of 22% cash/78% stock.
>
> Additionally, the Ritchie Bros. Board of Directors announced that it expects to approve the issuance of a one-time special dividend to Ritchie Bros. shareholders in the amount of $1.08 per common share, which will be payable to holders of record as of a pre-closing record date to be determined with the consent of the Toronto Stock Exchange ("TSX") and contingent on the closing of the IAA transaction.

**The Materially Incomplete and Misleading Proxy Statement**

23. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on February 10, 2023  The Proxy Statement, which recommends that IAA stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for IAA and the financial analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); and (b) potential conflicts of interest faced by J.P. Morgan.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and J.P. Morgan's Financial Analysis*

24. The Proxy Statement fails to disclose material information concerning the financial forecasts for the Company, including the updates made to the stretch case IAA forecasts in July 2022 and between August 2022 and October 2022.[6]

25. The Proxy Statement further fails to disclose the Company's unlevered free cash flows over the projection period, and the underlying line items, with respect to the stretch case IAA forecasts.

26. The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

27. With respect to the *Valuation Analysis - Discounted Cash Flow* performed by J.P. Morgan, the Proxy Statement fails to disclose RBA's terminal values.

28. With respect to the *Discounted Cash Flow Analysis* of IAA performed by J.P. Morgan, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) the Company's net debt; and (c) the Company's fully diluted outstanding shares.

29. With respect to the *Selected Public Trading Multiples Analysis* and *Selected Transaction Multiples Analysis* of IAA performed by J.P. Morgan, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies and transactions analyzed by J.P. Morgan, respectively.

---

[6] The Proxy Statement indicates that "a preliminary version of the IAA forecasts was presented to the IAA board in February 2022 in connection with setting incentive compensation targets (such initial preliminary forecasts, the 'stretch case IAA forecasts')." Proxy Statement at 134. According to the Proxy Statement, IAA management subsequently revised the stretch case IAA forecasts in July 2022 and between August 2022 and October 2022.

30. With respect to the *Analyst Price Target* analysis of IAA performed by J.P. Morgan, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

31. With respect to the *Discounted Cash Flow Analysis* of RBA performed by J.P. Morgan, the Proxy Statement fails to disclose: (a) RBA's terminal values; (b) RBA's net debt as further adjusted to reflect the expected pro forma impact of the Starboard investment; and (c) RBA's fully diluted outstanding shares.

32. With respect to the *Selected Public Trading Multiples Analysis* and *Selected Transaction Multiples Analysis* of RBA performed by J.P. Morgan, the Proxy Statement fails to disclose the respective individual financial metrics for each of the selected companies and transactions analyzed by the financial advisor.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

33. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction, including whether any of the standstill provisions included in the confidentiality agreements the Company entered into with 18 companies are "don't-ask, don't-waive" standstill provisions that are still in effect and presently precluding any of the parties from submitting a topping bid for the Company.[7]

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Potential Conflicts of Interest*

34. The Proxy Statement fails to disclose material information concerning J.P. Morgan's potential conflicts of interest, including the estimated aggregate fee J.P. Morgan is

---

[7] *See* Proxy Statement at 125-126.

expected to receive in connection with the Proposed Transaction. The Proxy Statement also fails to disclose the aggregate fees, if any, J.P. Morgan has recognized from Starboard during the two-year period preceding the delivery of its fairness opinion.

35. The omission of the above-referenced information renders statements in the "Certain IAA Financial Forecasts" and "Opinion of IAA's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

36. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and IAA**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. IAA is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual

Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of IAA within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of IAA and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 14, 2023                **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*

15